IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL PAUL NELSON )
 )
 )
Plaintiff, )
 )
v. ) 1:23CV233
 )
GUILFORD COUNTY, NC, et al., )
 )
Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This civil rights action is before the Court on the Motion to Dismiss [Doc. #20] of Defendants Guilford County, Sheriff Danny H. Rogers, and Lieutenant William Grimes (hereinafter "moving Defendants"). Plaintiff brings claims against Defendant Grimes and Defendant Rogers under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment based on deliberate indifference to his serious medical needs as a pretrial detainee, and brings a claim against Defendant Guilford County for violations of the Americans with Disabilities Act. Plaintiff also brings claims under the Fourth and Fourteenth Amendments against Defendant Officer Alfonso Boyce, who has answered but has not filed a motion to dismiss. For the reasons set out below, the Court recommends that the moving Defendants' Motion to Dismiss be granted in part and denied in part. Specifically, the ADA claims should be dismissed as time-barred based on the two-year statute of limitations, and the claims against Guilford County and Sheriff Rogers should be dismissed for lack of an alleged policy or practice for municipal liability, but the claims against Defendant Grimes in

his individual capacity should not be dismissed at this stage, and the issues raised by Defendant Grimes can be considered on subsequent dispositive motions.

I.   FACTUAL ALLEGATIONS AND CLAIMS[1]

The Complaint alleges that as a result of multiple traumatic brain injuries sustained while serving in the armed forces, Plaintiff has several physical impairments, including blindness. (Compl. [Doc. #1] ¶¶ 11-12, 18.) According to the Complaint, the Department of Veterans Affairs has provided Plaintiff with an assortment of assistive devices, including recording devices like an iPhone and a body-worn camera, that in some form compensate for his inability to see. (Compl. ¶¶ 15-18.)[2]

The Complaint alleges that on February 4, 2020, Plaintiff went to the Guilford County Health Department in High Point, North Carolina. (Compl. ¶ 37.) Defendant Alfonso Boyce, a North State Security Group security officer providing police services for Guilford County facilities, was present at the location as a security officer. (Compl. ¶ 38.) Plaintiff alleges that he sought to obtain services but was told to leave and was told that he could not record inside the Health Department. (Compl. ¶¶ 43-69, 73, 79.)[3] After interactions with various employees, Plaintiff was told that the Health Department was closing and that if he did not leave he would be arrested for trespass. (Compl. ¶¶ 56-57, 63, 70-71, 75-78, 80.) According to the Complaint, Plaintiff responded that he would leave but he continued to seek clarification

---
[1] The Court sets out here the facts alleged in the Complaint that are relevant to the present Motion to Dismiss.

[2] Throughout the Complaint, Plaintiff relies in part on information obtained from video recordings made by these and other devices to supply or supplement the factual allegations.

[3] The Complaint acknowledges that, as Plaintiff entered the building, signs on the doors stated "No Cameras or Other Recording Devices Allowed Beyond This Point." (Compl. ¶ 39.) However, according to the Complaint there was no checkpoint to enforce or announce this policy to inform Plaintiff. (Compl. ¶ 39.)

2

of what crime he was committing, and Defendant Boyce grabbed him and forced him to the ground while attempting to place him in handcuffs. (Compl. ¶¶ 81-86.)

The Complaint alleges that Plaintiff did not know that the person grabbing him was a security officer, and the Complaint concedes that Plaintiff resisted and asked for the person's identity. (Compl. ¶¶ 86, 88.) The Complaint alleges that Defendant Boyce then lifted Plaintiff up and slammed his head onto the floor, causing him internal brain bleeding. (Compl. ¶¶ 87, 90, 94, 127.) According to the Complaint, Defendant Boyce then identified himself as a police officer and Plaintiff stopped resisting. (Compl. ¶¶ 88-90.)

According to the Complaint, Defendant Boyce and other security officers handcuffed Plaintiff, twisted and pushed him to force him into a wheelchair, and pushed him to the nearby Guilford County Detention Center for booking and release. (Compl. ¶¶ 92-93, 101.) The Complaint alleges that Plaintiff was placed in the wheelchair in such a way that he was sitting on his wrists and handcuffed hands and he remained that way at all times while in the chair, causing nerve damage to his wrists. (Compl. ¶¶ 127, 190.) The Complaint alleges that after initially crying out in pain and yelling for help, Plaintiff fell silent, physically stopped moving, lost consciousness, and became unresponsive to verbal questioning and physical stimuli. (Compl. ¶¶ 94, 96, 98.) According to the Complaint, Plaintiff remained in this unconscious, unmoving, and unresponsive state for nearly three hours. (Compl. ¶¶ 94, 96, 98, 101, 103, 108-109, 112-119, 121-122.)[4]

---

[4] The information as to what occurred after Plaintiff lost consciousness is based on references to various video recordings. (Compl. ¶¶ 94, 96, 112, 114, 117-118, 121.)

3

The Complaint alleges that, after bringing Plaintiff to the Detention Center, Defendant Boyce did not seek medical care for Plaintiff and instead left Plaintiff outside the magistrate's office and then took him to the booking area. (Compl. ¶¶ 97, 106.) According to the Complaint, Defendant Lieutenant Grimes then took custody of Plaintiff for booking purposes, approximately one hour after the head injury (Compl. ¶ 103.) The Complaint alleges that Plaintiff was slumped in his wheelchair and was unresponsive, and Defendant Boyce conducted a sternum rub on Plaintiff and Plaintiff did not respond. (Compl. ¶¶ 103-105.)[5]

As part of the booking process, an unknown officer eventually took Plaintiff to see a registered nurse who examined Plaintiff by checking his vital signs, but the results of this examination are not contained in the Complaint. (Compl. ¶¶ 114-115.) According to the Complaint, about one hour after he arrived, the booking was completed and Defendant was released, but he remained unconscious. The Complaint alleges that Defendant Grimes and another officer then pushed him outside of the Detention Center, removed him from the wheelchair, placed him on the ground, and walked away, leaving him alone and unconscious on the sidewalk. (Compl. ¶¶ 117, 121.) The Complaint alleges that an hour after being left on the sidewalk, and after nearly three hours of being completely unresponsive, Plaintiff regained partial consciousness and called 911. (Compl. ¶ 122.) A subsequent medical examination related to that call revealed that Plaintiff had suffered a "brain injury that caused a bleed in his brain" and Plaintiff was transferred to a hospital that confirmed that diagnosis. (Compl. ¶¶ 123-124, 127.) The Complaint alleges that Plaintiff was only able to regain sufficient

---

[5] According to the Complaint, a sternum rub is a test of the brain's ability to involuntarily respond to the application of a painful stimulus; a person who does not respond to a sternum rub has disrupted brain functions and is "critically ill or injured." (Compl. ¶¶ 104-105, 148.)

4

consciousness to be able to respond to verbal communications five hours after entering the hospital. (Compl. ¶ 124.)

On February 3, 2023, Plaintiff filed his Complaint with the above allegations in the United States District Court for the District of South Carolina, and the action was transferred to this Court on consent of the Parties on March 14, 2023.

The Complaint pleads: (1) a § 1983 claim against Officer Boyce for seizure without probable cause based on the initial arrest; (2) a § 1983 claim against Officer Boyce for excessive force in taking Plaintiff into custody; (3) a § 1983 claim against Officer Boyce for deliberate indifference to Plaintiff's serious medical needs; (4) a § 1983 claim under the Fourteenth Amendment against Defendants Grimes in his individual and official capacity and Sheriff Danny Rogers in his official capacity for deliberate indifference to Plaintiff's injuries and unconsciousness (Compl. ¶¶ 153-169); and (5) an Americans with Disabilities Act claim against Defendants Boyce and Guilford County based on deficient training and performance in how officers treated the disabled Plaintiff during his arrest and detention (Compl. ¶¶ 170-191). Defendants Grimes, Sheriff Rogers, and Guilford County have moved to dismiss the claims against them, specifically Count 4 under the Fourteenth Amendment against Defendants Grimes and Sheriff Rogers, and Count 5 under the ADA against Defendant Guilford County, as well as any claims against Defendant Boyce in his official capacity that could be construed as claims against Guilford County.

II. LEGAL STANDARD

The moving Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted.

5

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 500 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678; Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023). Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

III. DISCUSSION

A. Statute of Limitations

The moving Defendants first seek dismissal of Plaintiff's ADA claim on the ground that he brought suit outside of the applicable two-year statute of limitations. (Defs.' Br. [Doc. #21] at 8-9.) Although the statute of limitations is an affirmative defense, "[a] court may dismiss a complaint on statute of limitations grounds if the time bar is apparent on the face of

6

the complaint." Sanchez v. Arlington Cnty. Sch. Bd., 58 F.4th 130, 135 (4th Cir. 2023) (internal quotation omitted).

The Parties agree that the applicable statutes of limitations under the ADA is two years, and Plaintiff does not contest that he knew or had reason to know of the injury forming the basis of his ADA claim on February 4, 2020, three years before he filed suit. Manion v. N.C. Med. Bd., 693 F. App'x 178, 180 (4th Cir. 2017) ("[W]e conclude that the district court was correct that the statute of limitations on Manion's ADA claim was two years."); Davis v. Blanchard, 175 F. Supp. 3d 581, 598-99 (M.D.N.C. 2016) (dismissing ADA claim on two-year statute of limitation grounds); Mary's House, Inc. v. North Carolina, 976 F. Supp. 2d 691, 699 (M.D.N.C. 2013) (noting that for ADA claims the Court borrows the two-year state statute of limitations in North Carolina from the Persons with Disabilities Protection Act, N.C. Gen. Stat. 168A, but "the determination of the time that a claim accrues is a matter of federal law" and a "claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." (internal quotation omitted)).

Plaintiff nevertheless argues that the statute of limitations period has not yet begun to run or is a continuing violation with renewed limitations periods running from each violation. Specifically, Plaintiff contends that Defendant "Guilford County's prosecuting Plaintiff for trespassing is the fundamental ADA violation here, and such prosecution continues to this day," and therefore "Guilford County resets the statute of limitations on the associated ADA violation until they drop the associated criminal charges against Plaintiff or the legal action is resolved." (Pl.'s Br. [Doc. #26] at 15, 17.)

7

There is no support in the Complaint for Plaintiff's belated argument that an ongoing prosecution by Guilford County forms the true basis of his cause of action and would therefore be an ongoing ADA violation that perpetually extends the statute of limitations period as to all named Defendants. Indeed, in North Carolina a prosecution is not undertaken by a county, but by the state. See, e.g., Kunstler v. Britt, 914 F.2d 505, 514 (4th Cir. 1990) (a district attorney and a district attorney's staff are state officers, not agents or employees of a county). Moreover, Plaintiff does not allege in even a conclusory manner that his ADA claims are based on a prosecution, nor does he allege that a prosecution is pending against Plaintiff as part of the basis for the claims. Instead, the factual allegations giving rise to Plaintiff's ADA claim all relate to the physical interactions between Plaintiff and Defendants prior to and during arrest, not as part of a prosecution. In the Complaint, Guilford County is only alleged to have violated Plaintiff's rights by failing to make reasonable accommodations "[t]hrough Defendant Officer Boyce" and through its alleged failure to adequately train on how to interact with people with disabilities, specifically by "not handcuffing the blind behind their back or at all, using less confrontational tactics, allowing the passage of time to defuse the situation, or waiting for backup" as well as failing to provide reasonable accommodations for his injuries, leaving him handcuffed while he was unconscious. (Compl. ¶¶ 67-87, 126, 135, 182, 185-191.) None of these claims allege an ADA violation as a result of or as part of a criminal prosecution, and Plaintiff has not alleged any basis for a continuing violation or any ongoing acts by any of the Defendants in violation of the ADA. See also Miller v. King George County, 277 F. App'x 297, 299-300 (4th Cir. May 12, 2008). Finally, the fact that Plaintiff may be asserting § 1983 claims against Defendant Boyce related to the arrest does not somehow toll or change the

8

statute of limitations for the ADA claims. Plaintiff does not allege that he did not know or have reason to know of the injury forming the basis of the ADA claims when they occurred on February 4, 2020. Moreover, the Complaint itself makes clear that Plaintiff was present for and directly experienced the alleged violations on those dates. Thus, even under an extremely liberal reading of the Complaint, there is no support for Plaintiff's tolling argument.[6]

For these reasons, Plaintiff's ADA claim against Guildford County, relating to incidents occurring on February 4, 2020 and first raised in a Complaint filed three years later on February 3, 2023, is time-barred by the applicable two-year statute of limitations. The Court therefore recommends that moving Defendants' Motion to Dismiss be granted as to the ADA claim (Compl. ¶¶ 170-191).

B. Official-Capacity Deliberate Indifference and *Monell*

The moving Defendants next seek to dismiss the deliberate indifference claims against Guilford County and against the individual Defendants in their official capacity on the basis that the Complaint fails to properly allege a policy or custom that would permit municipal liability. (Defs.' Br. at 9-12). In the Complaint, Plaintiff does not assert any claims against Guilford County other than the ADA claim addressed above. However, Plaintiff asserts

---

[6] In the Motion to Dismiss, the moving Defendants note that Plaintiff was charged with Trespassing and Resisting Arrest, was found guilty in state district court, appealed to state superior court, but then failed to appear in state superior court and is the subject of an outstanding arrest warrant from state superior court for failure to appear. However, Plaintiff has not asserted a claim for malicious prosecution or an ADA claim related to the prosecution itself, and unlike a claim for malicious prosecution, the ADA claim would not require Plaintiff to establish as an element that the criminal charges against him had terminated in his favor. Cf. Wallace v. Kato, 549 U.S. 384, 389 (2007). The Court also notes that if the ADA claims had been brought within the two-year statute of limitations, the Court could consider whether a stay was appropriate so as not to interfere with the criminal case. Younger v. Harris, 401 U.S. 37, 41 (1971). However, at this point staying this case would not render timely claims for which the statute of limitations has already run, so regardless of any potential stay, the ADA claims are not timely and should be dismissed.

claims against Defendant Boyce in his official capacity, and also asserts claims against Defendant Grimes and Sheriff Rogers in their official capacities.

Under § 1983, municipal liability is limited to actions for which the municipality is "actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Municipal liability under § 1983 applies to local government entities, including local government officials sued in their official capacity, when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 & n.55 (1978); see also Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (noting that claims against public officials in their official capacities are claims against the government entity that employs the official). A local government entity is not liable under § 1983 "*solely* because it employs a tortfeasor." Monell, 436 U.S. at 691. A policy or custom for which municipal liability can arise may be established in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022) (internal brackets omitted) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only widespread or flagrant violations will." Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 403 (4th Cir. 2014) (internal quotation omitted).

The Complaint alleges official-capacity claims against Defendant Sheriff Danny Rogers and Defendant Grimes for establishing or permitting an unofficial policy that allowed registered nurses in the Guilford County Detention Center to "examine pretrial detainees exhibiting medical emergencies instead of securing a licensed physician." (Compl. ¶¶ 160-161, 166-167.) However, it is unclear how such a policy would be a constitutional violation. Moreover, Plaintiff further pleads that the actions taken on February 4, 2020 were contrary to the actual Medical Care Plan in place for the facility. In addition, Plaintiff does not plead, in even a cursory manner, that any other incidents similar to his have occurred. Thus, the Complaint alleges that the conduct was actually contrary to Jail Policy, and does not allege more than a single isolated incidence of deviation from that Policy.

Relatedly, to the extent Plaintiff attempts to plead municipal liability through a "failure to supervise and train," (Compl. ¶ 126), "a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse." Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983); see also Connick v. Thompson, 563 U.S. 51, 63 n.7 (2011) ("contemporaneous . . . conduct cannot establish a pattern of violations" necessary to establish a deficient training claim). In his responsive brief in opposition to dismissal, Plaintiff contends that he has alleged a custom and practice or widespread pattern because other non-defendant officers walked past him or failed to intervene. (Compl. ¶¶ 153-157; Pl.'s Br. at 20-21.) However, walking past Plaintiff would not be similar to the extended interactions alleged against Defendants Boyce and Grimes, and the facts as alleged would not support a widespread custom or practice of deliberately indifference to a serious medical need. Ultimately, these contentions related to this single occasion are insufficient to plausibly allege

11

a municipal policy or failure to train. See Horton v. City of Raleigh, No. 5:15-CV-349-FL, 2016 WL 2901743, at *6 (E.D.N.C. May 18, 2016) ("Plaintiffs have not alleged, however, multiple incidents of misconduct permitting an inference of a custom or practice of such targeting or detaining" and "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates" and "to the extent plaintiffs rely upon the failure of other officers to intervene in the arrests in the instant case, this failure here does not provide factual material necessary to draw an inference of prior repeated incidents of misconduct"). The allegations are insufficient to give rise to a plausible accusation of a municipal policy, and the official capacity claims should be dismissed.

In addition, although Defendant Boyce has not filed a motion to dismiss, Defendant Guilford County seeks to dismiss any official capacity claims against Defendant Boyce, to the extent that the official capacity claims are actually claims against Guilford County. Plaintiff asserts claims against Defendant Boyce for alleged false arrest, alleged excessive force, and alleged deliberate indifference, but under the authority and analysis set out above, Plaintiff has not plausibly alleged a custom, policy, or practice through this singular incident that would form a basis for municipal liability as to Guilford County for the alleged conduct of Defendant Boyce on February 4, 2020.

For these reasons, the Court recommends that the official capacity claims be dismissed without prejudice.

C.      Individual-Capacity Deliberate Indifference and Qualified Immunity

Finally, the moving Defendants move to dismiss on the ground that the Complaint fails to state a Fourteenth Amendment claim of deliberate indifference against Defendant Grimes in his individual capacity and that he would in any event be entitled to qualified immunity against any such claim. (Defs. Br. at 12-20.)

Pre-trial detainees may state a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm "on the purely objective basis that the governmental action they challenge is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose." Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023) (internal quotations omitted). In other words, a pre-trial detainee need only show "that the defendant's action or inaction was . . . objectively unreasonable." Id.; accord Lapp v. United States, No. 1:23-cv-00248 (MSN/LRV), 2023 WL 8628314, at *6 (E.D. Va. Dec. 13, 2023). Thus, the Fourth Circuit has held that:

> To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Short, 87 F.4th at 611.

Until recently, a claim for deliberate indifference by a pretrial detainee also included a subjective component requiring that the official actually knew of the excessive risk to the individual's safety, because the standards for evaluating deliberate indifference claims under the Eighth Amendment for a convicted prisoner and under the Fourteenth Amendment for a

13

pre-trial detainee were treated the same. See Short, 87 F.4th at 607. However, in Short v. Hartman, the Fourth Circuit considered the recent decision of the Supreme Court in Kingsley v. Hendrickson, which held that, to state a Fourteenth Amendment Due Process Clause claim for excessive use of force, a pretrial detainee need only allege that the officer used objectively unreasonable force. Short, 87 F.4th at 608 (discussing Kingsley v. Hendrickson, 576 U.S. at 398). Based on the application of Kingsley, the Fourth Circuit in Short concluded that the subjective element does not apply to Fourteenth Amendment deliberate indifference claims by pretrial detainees. Therefore, under Short, a pretrial detainee need not show that the defendant actually knew of the serious medical condition, but must show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 611 (internal quotation omitted).

Notably, however, the qualified immunity defense could still consider the subjective element in this circumstance, as outlined by the Fourth Circuit in Mays v. Sprinkle, 992 F.3d 295 (4th Cir. 2021). For § 1983 claims asserted against individual officers, qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In Mays v. Sprinkle, the Fourth Circuit considered at length the application of qualified immunity on a claim of deliberate indifference to the serious medical needs of a pretrial detainee. See Mays v. Sprinkle, 992 F.3d 295, 301-02 (4th Cir. 2021). The Fourth Circuit in Mays noted that at the time of the underlying incident, the

> pretrial-detainee-medical-deliberate-indifference claim required both an objectively serious medical condition and subjective knowledge of the condition

14

and the excessive risk posed from inaction. So regardless of Kingsley, qualified immunity turns on whether any reasonable official in the defendant's shoes would have understood that he was violating that objective and subjective standard. Without allegations that plausibly satisfy both the objective and subjective elements, the officers would have a right to dismissal based on qualified immunity. Said another way, if the allegations show that the officers lacked the required subjective knowledge, then the officers would not have violated clearly established law. Only if the allegations plausibly show an objectively serious medical condition and subjective knowledge by the officers will [the plaintiff's] claim clear the qualified-immunity hurdle.

Mays, 992 F.3d at 301-02 (internal citations and quotations omitted). Notably, however, when qualified immunity is raised at the Rule 12(b)(6) stage, the Court would only consider legal questions regarding the substance and clarity of pre-existing law, not factual contests about what occurred, or why an action was taken or omitted. See, e.g., Ortiz v. Jordan, 562 U.S. 180, 190-92 (2011); see also Mays, 992 F.3d at 304-05.

The Complaint alleges that Plaintiff did not move for over an hour while in the presence of Defendant Grimes, and further alleges that later medical examination reflected a brain injury that rendered him entirely unconscious during any attempted interaction with him at the detention facility. The Complaint also, and relatedly, alleges that Defendant Grimes interacted with Plaintiff repeatedly over the hour and should have known that he required medical attention related to his prolonged unconsciousness. Specifically, the Complaint alleges that after Plaintiff came into Defendant Grimes' custody, Plaintiff was entirely unresponsive to a sternum rub, and that after this, Plaintiff remained unconscious and unresponsive while Defendant Grimes took him out of the wheelchair and placed him, unmoving, on a public sidewalk without Plaintiff even being aware that this was occurring. Finally, the seriousness of Plaintiff's injuries was subsequently corroborated by medical examinations which indicated he had suffered from bleeding in his brain. All of this alleges a medical condition of such

15

obvious seriousness as to state a claim for deliberate indifference to a serious medical need of a pretrial detainee.

In support of dismissal, the moving Defendants argue that Defendant Grimes did not know that Plaintiff was unconscious or suffering any other effects of his head injury in part because the arresting officer stated that Plaintiff was "faking" his symptoms. (Defs.' Br. at 14-15.) Moving Defendants also point to the fact that Plaintiff was examined by a nurse at some point, although the Complaint alleges that this was a medical screening of vital signs that in no way addressed, or even attempted to address, Plaintiff's unconsciousness. Ultimately, these contentions, and the information known to and observed by Defendants, require consideration beyond the allegations in the Complaint. Notably, the Court agrees with moving Defendants that the fact that a nurse examined Plaintiff raises a significant question whether Defendant Grimes knew that Plaintiff had a serious medical condition and that inaction posed an unjustifiably high risk of harm. However, these are fact-intensive questions, and the Complaint alleges that the nurse did not undertake a full examination, and that Defendant Grimes interacted with Plaintiff over the course of an hour, including when he placed a completely unresponsive Plaintiff on a public sidewalk without further assistance, and that Plaintiff did not move, respond, or in any way exhibit consciousness for the entire time he was in custody, which was later determined to be the result of a brain bleed. Resolving the claim of deliberate indifference to a serious medical need, and the possible defense of qualified immunity, would require factual determinations regarding the circumstances presented, what Defendant Grimes was told, what Defendant Grimes observed, what the nurse's examination involved, and what occurred after that examination. These factual issues can be addressed

16

further on a motion for summary judgment, as in the cases cited by moving Defendants in their briefing, but cannot be resolved on the standards applicable for a motion to dismiss under Rule 12(b)(6). See Mays, 992 F.3d at 305 (distinguishing cases resolved at summary judgment, and noting that "the officers here seek to question their knowledge about Mays's use of pills and discount the inferences to be drawn from the 911 call and Mays's appearance. But on a motion to dismiss, we cannot rely on facts not found in the complaint or draw inferences in the officers' favor. So we must conclude that Mays has plausibly alleged that his need for medical care was obvious enough to make it easily recognizable.").

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that the moving Defendants' Motion to Dismiss [Doc. #20] be GRANTED in part and DENIED in part. The Motion to Dismiss should be GRANTED as to the ADA claims against Defendant Guilford County and as to the claims against the individual Defendants in their official capacities. As a result, all of the claims against Defendant Guilford County and Defendant Sheriff Rogers should be dismissed. However, the Motion to Dismiss should be DENIED as to the Fourteenth Amendment claim against Defendant Grimes in his individual capacity, without prejudice to further consideration of those issues on motions for summary judgment.

This, the 20th day of February, 2024.

                                                  /s/ Joi Elizabeth Peake
                                            United States Magistrate Judge

Case 1:23-cv-00233-LCB-JEP Document 33 Filed 02/20/24 Page 17 of 17